## THE TENNESSEE.

(District Court, D. Rhode Island. July 9, 1910.)

### No. 1,227.

COLLISION (§ 69*)—STEAMER AND ANCHORED BARGE—FAULT OF MOVING VESSEL.

A collision at night between a steamer entering the port of Providence, R. I., and a coal barge anchored in the upper harbor near the west side of the dredged channel in a customary and proper place, *held* due solely to the fault of the steamer in being too near the west side of the channel and going at too great a speed.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 87–90; Dec. Dig. § 69.*]

In Admiralty. Suit by the Staples Coal Company, as owner of the coal barge Norton, against the steamship Tennessee. Decree for libelant.

Frank Healy, for libelant.
Bassett & Raymond, for claimant.

BROWN, District Judge. The libelant's coal barge Norton, 163 feet long, while anchored in the upper harbor of Providence, R. I., at about 5:50 or 5:55 o'clock on the morning of December 29, 1909, was

struck by the steamship Tennessee, 245 feet long, coming in on her regular trip from New York.

The barge was anchored, according to the libelant's contention 250 to 300 feet, and according to the claimant's contention 300 to 350 feet, southeasterly from the City Dock, so called. According to the preponderance of testimony she was heading northeast or east-northeast, and tailing well over toward the westerly side of the channel or dredged basin. This westerly side of the channel or dredged basin is a customary anchorage for coal barges, having been designated by the harbor master of the port of Providence for the anchorage of barges, and being well known as the customary place of anchorage to those in charge of the Tennessee.

That the Norton was anchored in a proper location, and as close as practicable to the westerly line of the dredged channel or basin, is well established by the testimony of several well-known towboat captains, by the harbor master, who testifies to locating the anchorage of the barge by ranges some two hours after the collision, and by other entirely reliable witnesses.

The Norton was struck on her starboard quarter, 10 or 15 feet from her stern, and her deck was cut into about 15 feet, and she received other injuries, all indicating a considerable speed on the part of the Tennessee at the time of collision.

According to the testimony of the officers of the Tennessee, just before the impact her helm was put hard to starboard in an attempt to pass the stern of the barge.

It is apparent that the Tennessee was much farther over to the westerly side of the channel than was necessary. There was abundant room for her in mid-channel, or to the easterly side of the channel. It is contended for the claimants that the collision was the result of inevitable accident and that the Tennessee could not have avoided the accident because of a fog or haze. That there was some haze at the time is quite probable; but it is very questionable whether it was sufficient to have prevented a timely discovery of the barge, had there been due diligence in maintaining a lookout. But, assuming that the fog was thick, this but emphasizes the negligence of the Tennessee in proceeding to lay a course from Sassafras Point so close to the westerly edge of the dredged channel and so close to the usual location of barges at anchor.

The testimony from the Tennessee as to her speed is far from satisfactory. Her master testifies that she was not making more than three knots just before the collision, but upon the entire testimony I am unable to find that the Tennessee had varied the ordinary speed with which she goes to her dock on clear mornings.

I am of the opinion that the Norton was entirely without fault in the matter, and that the collision was due entirely to the negligence of the Tennessee.

A decree may be entered for the libelant.